### In re OLANSKY et al.

(District Court, E. D. New York. May 4, 1908.)

BANKRUPTCY—DISCHARGE—FRAUDULENT CONCEALMENT OF PROPERTY.

Where, on the hearing of objections to the discharge of bankrupt partners on the ground of having fraudulently concealed property from their trustee, it was shown that they aided and assisted in a transfer of the partnership property to a creditor by means of the foreclosure of a chattel mortgage previously given by them more than four months prior to the bankruptcy, the question whether such acts were sufficient in law to bar their discharge depends on the validity of the chattel mortgage and its foreclosure, and a discharge will not be granted until that question has been determined in a proper proceeding therefor.

In Bankruptcy. On application for discharge.

McGuire, Horner & Smith, for objecting creditor.
Williams, Folsom & Strouse, for bankrupts.

CHATFIELD, District Judge. The bankrupts herein filed an involuntary petition in bankruptcy on the 12th day of June, 1907. From prior to January, 1907, until the 13th of June, 1907, the bankrupts had had business relations with the firm of Dixon & Dewey, which firm went into the hands of a receiver for liquidation in the state courts prior to the time of the bankruptcy herein. One Harry S. Dewey of this firm was acting as receiver, appointed in the state court proceedings, and a brother, James E. Dewey, went into actual possession of the plant and property of H. Olansky & Co., which subsequently became bankrupts under a claim arising from a chattel mortgage to secure the sum of $20,000, and given by the bankrupts to the firm of Dixon & Dewey, in the month of January, 1907, at a time when the firm of H. Olansky & Co. owed to the firm of Dixon & Dewey several thousand dollars, and after which further goods were sold and credit given to the bankrupts, for which the $20,000 chattel mortgage was intended to be security.

It is unnecessary at this time to consider at all the validity of this chattel mortgage. This question, as well as that of the sufficiency of the foreclosure, must be raised by the appropriate action on behalf of the trustee. The testimony on the present reference shows that a city marshal held what purports to have been an auction, and turned over the property upon a bid to the firm of Dixon & Dewey, upon a sale testified to have been held in the process of such foreclosure. Certain articles of machinery on the premises, and capable of passing into the possession of the trustee in bankruptcy, were not specifically mentioned in the schedules attached to this chattel mortgage; but the mortgage contained the words "all other machinery now on the premises."

The bankrupts kept no regular books, and in the spring of 1907, under the suggestion of Mr. Dewey, made up a set of books in the ledger of which the first seven pages were subsequently pasted together and rewritten, and, while these books do not completely set forth the assets and liabilities of the firm, nevertheless the evidence seems to show that they did more or less accurately set forth the transaction with reference to which entries were made. There is some testimony (Horner, p. 93) as to ledger references, which would indicate that some books had been kept; but there is no evidence to indicate that the failure to keep books was with the intent to deceive or defraud their creditors.

Subsequent to the filing of the petition in bankruptcy and of the alleged foreclosure, one Eustace Conway was appointed receiver, as successor to Harry S. Dewey, of the firm of Dixon & Dewey, and Mr. Conway allowed matters to run along, leaving James E. Dewey in possession of the property, but disavowing any possession as receiver, or any responsibility for the acts of James E. Dewey, and Mr. Conway in the testimony claims that he has a right to elect, and that he had exercised no election, with reference to taking possession of the property; it never having been determined by him whether the assets of the firm of Dixon & Dewey would be increased by the taking of such possession. There is considerable doubt thrown upon the operations of James E. Dewey as manager for Harry S. Dewey as receiver; there being some testimony to show that James E. Dewey's operations had been the opposite of profitable to the estate.

In this condition of affairs, an application for discharge was made on behalf of the bankrupts. The bankrupts, and also a daughter of the bankrupt Olansky, were for a considerable period of time retained in the employ of James E. Dewey as employés, and there salaries were paid by him. The daughter is also shown by the testimony to have made a considerable portion of the entries in the books which were written up in the spring of 1907. Certain creditors, formerly represented as attorney by Eustace Conway, the successor to the state receivership, retained other counsel at Mr. Conway's suggestion, and these counsel have filed, as attorneys for the objecting creditors, specifications in opposition to the discharge of the bankrupts. The testimony now on file and under consideration was taken upon a reference of these specifications, and the special commissioner has reported that the discharge of the bankrupts should be denied, on the ground that the bankrupts had concealed from their trustee certain property, with

intent to defraud their creditors; but the special commissioner has found in favor of the bankrupts on an objection to the effect that the bankrupts had failed to keep proper books of account. Upon the hearing before the special commissioner no testimony was offered as to the sufficiency of the proceedings to foreclose the chattel mortgage, nor was the chattel mortgage put in evidence; the attorneys for the bankrupt claiming that the burden of proof in attacking this foreclosure was upon the objecting creditors. Exceptions on the part of the bankrupts have been filed to the special commissioner's report; the bankrupts claiming that the evidence showed ·no concealment on the part of the bankrupts of any property, title to which passed to the trustee, and also that no fraudulent acts on the part of the bankrupts with relation to the property of the estate, or property to which the estate has a claim, have been shown. The objecting creditors defend the special commissioner's report as justified by the testimony, and it may be conceded that the report should be sustained, unless clearly in error.

The difficulties in this entire proceeding seem to have arisen from the relations existing between the firm of Dixon & Dewey and the alleged bankrupts, and it is apparent that the bankrupts attempted at all times to pay the claims of Dixon & Dewey, and made no effort to reserve any of their property for the benefit of any creditors except Dixon & Dewey. Mr. Conway occupies the somewhat anomalous position of being desirous of obtaining any benefits which might have resulted to the firm of Dixon & Dewey, and also of endeavoring to save for the other creditors of the bankrupt any property which can be rescued by these creditors, and which is not available to him as the receiver of Dixon & Dewey. It is difficult to see what advantage will accrue to the estate by the refusal to grant a discharge; but it is also difficult to escape from the conclusion that the bankrupts were endeavoring, through all of these transactions, to keep their property in the hands of Dixon & Dewey, or the assignee of that firm, and no other explanation or motive for the acts of the bankrupt is apparent, aside from the employment of the bankrupts by this receiver.

The conclusion of the special commissioner that they were concealing property from the trustee in bankruptcy, in that they were aiding the purchasers under the alleged foreclosure, would seem to be sustained by the testimony. Whether the bankrupts had a right to do this depends upon whether the foreclosure was valid, and the question of the discharge of these ·bankrupts should be left undetermined until the validity of the chattel mortgage and the sufficiency of the foreclosure thereof has been passed upon by some court having jurisdiction thereof. If the alleged chattel mortgage was invalid, and the transactions under it should be set aside as an attempt to defraud the creditors of the bankrupts while they (the bankrupts) were insolvent, then the discharge of the bankrupts should be refused, inasmuch as they assisted therein. If, on the other hand, the foreclosure of the chattel mortgage was valid, and the possession of the property by the receiver of Dixon & Dewey was under a claim of law, which attached to all of the property in the possession of that receiver, then the fact that the possession and ownership of some of the property is.

not now insisted upon by the receiver of Dixon & Dewey would make the acts of the bankrupts insufficient as a matter of law to prevent their discharge.

The application for a discharge will be denied, and the report, as modified, confirmed; but the bankrupts may reapply for a discharge within the 18-month period, if they have obtained a determination in their favor as to the validity and good faith of the chattel mortgage transaction.